# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SIERRA CLUB, )
)
       Plaintiff, )
)
   v. ) Case No. CIV-16-134-F
)
CHESAPEAKE OPERATING LLC, )
et al., )
)
       Defendants. )

**REPLY IN SUPPORT OF DEFENDANT DEVON ENERGY PRODUCTION COMPANY, L.P.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

# **INTRODUCTION**

Plaintiff's opposition insists that this Court should usurp the Oklahoma Corporation Commission's role as regulator of the state's wastewater disposal wells. But Plaintiff fails to distinguish the controlling cases that require dismissal on each of the grounds raised by Devon Energy Production Company, L.P. ("Devon") in its Motion to Dismiss. The controlling cases, however, are fully cited by the parties, briefed, and before the Court, and Devon does not reargue those points and authorities here. Rather, pursuant to Local Civil Rule 7.1(i), Devon confines its reply to new matters Plaintiff raises for the first time in its brief—matters also at odds with its pleadings.

In its Complaint, Plaintiff insisted that there was a void of seismicity regulation in Oklahoma that only this Court could fill. Based on its assertion that "no government body is currently taking a holistic or proactive view of waste injection," (Am. Compl. ¶ 9), Plaintiff demanded that this Court don the mantle of seismicity czar, enlist a cadre of hydrogeological experts, and order immediate and substantial reductions in disposal injection volumes across hundreds of wells.

After Defendants pointed out in their motions to dismiss that the Oklahoma Corporation Commission has been vigorously and comprehensively addressing seismicity for some time, Plaintiff abandoned its muscular vision of judicial seismicity regulation and now acknowledges that this Court must take a back seat to the Commission's regulatory efforts.

Plaintiff nevertheless wants this Court to be a backseat driver, ready to step in whenever Plaintiff disagrees with the Commission's hydrogeological judgment. The opposition brief offers three novel but unpersuasive rationales for this reimagined judicial role.

First, Plaintiff says that the Court can simply ignore the Commission's seismicity measures during an initial "liability" determination under the Resource Conservation and Recovery Act ("RCRA"), and then consider the Commission's actions later during the "remedial" stage. But there is no basis in the RCRA citizen suit provision for that sort of artificial and purposeful bifurcation.

Second, Plaintiff insists that the Court should intervene because the Commission's measures are only "voluntary." But the Commission has exclusive jurisdiction over the permitting of disposal wells and ample authority to make binding modifications to the Defendants' permits.

Finally, Plaintiff contends that the Commission lacks authority to regulate seismicity in general or to grant the specific relief Plaintiff seeks. The Oklahoma legislature, however, recently confirmed the Commission's power to take any action necessary to respond to seismicity concerns.

Thus, none of Plaintiff's newfound rationales justifies this Court's involvement in this regulatory matter. Because Plaintiff could have achieved all the relief it seeks from the Commission itself (and still can), the *Burford* abstention doctrine sensibly instructs the federal courts to let the Commission do its job.

## ARGUMENT

**I.     An Endangerment Finding Cannot Be Made While Simultaneously Ignoring The Commission's Comprehensive Regulatory Program**

Plaintiff asks this Court to turn a temporary blind eye to the Commission's ample authority and aggressive response to seismicity because "*[a]fter liability is adjudicated in this case*, Plaintiff will take full account of the developments at the state level and will fashion its request for relief to ensure the relief complements the approach the state has taken." (Plaintiff Br. 23 (emphasis added).) Plaintiff offers no support for this unprecedented theory of bifurcating a purely injunctive claim, even while essentially conceding the complexity of the Commission's ongoing efforts that address the seismic phenomena. And its "wait-and-see" approach is a complete about-face from the Amended Complaint, which demanded "an Order requiring Defendants to reduce *immediately and substantially* the amounts of Production Wastes they are injecting into the ground." (Am. Compl. ¶ 6 (emphasis added).)

More importantly, Plaintiff's new bifurcated approach is inconsistent with RCRA itself. Plaintiff apparently wants this Court first to rule *in the abstract* that disposal well operations present an "imminent and substantial endangerment," 42 U.S.C. § 6972(a)(1)(B), and only to consider the Commission's anti-seismicity measures afterwards when concocting a real-world remedy. But the "endangerment" language of RCRA requires "a threat which is present *now*," *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 486 (1996); *see also id.* at 485 ("An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately.'") (quoting Webster's New Int'l Dictionary 1245 (2d

ed. 1934)).  If this Court entered the seismicity thicket in this case, it would have to determine whether disposal well operations in Oklahoma *currently* constitute an imminent and substantial endangerment.

It is impossible to answer that fundamental statutory question without considering the effects of the Commission's actions and whether judicial intervention would interfere with the Commission's efforts.  The Commission has already taken (and continues to take) extensive measures to reduce the risk of seismicity—indeed, even Plaintiff admits that "the situation has evolved rapidly since Plaintiff filed this lawsuit."  (Plaintiff Br. 23.)  Any endangerment analysis that ignores the present status of Oklahoma's seismicity regulation would simply be beside the point.  Because there is no basis for artificially postponing consideration of the Commission's comprehensive authority over this matter, this Court should abstain now.

## II.     The Commission's Seismicity Directives Are An Integral Part Of Its Escalating Enforcement Regime

Next, Plaintiff asks the Court not to let the Commission exercise its regulatory powers unimpeded because the Commission's seismicity directives have been supposedly "informal and voluntary."  (Plaintiff Br. 22.)  But Plaintiff ignores that those "voluntary" directives have successfully achieved the desired volume reductions.  There is no dispute that all disposal well operators now comply with the Commission's volume reduction instructions, and that those measures have successfully reduced disposal volumes by a substantial amount.

Plaintiff also ignores that the Commission has real teeth that it has not needed to

use. The disposal of saltwater in wells is illegal without a permit pursuant to Oklahoma Administrative Code ("OAC") § 165:10-5-2(a), and the Commission possesses the authority to revoke disposal permits and shut down disposal wells in the state. *See* OAC § 165:10-5-7(f)(2).

In particular, the Oklahoma Constitution endows the Commission with "the powers and authority of a court of record," including the right "to enforce compliance" with its orders by fines and other means. Okla. Const. art. IX, § 19. The Commission's regulations also authorize it to bar further injections when the disposed fluids leave the authorized injection interval, OAC § 165:10-5-7(f)(2)(A), (C), and can modify or terminate injection permits "for cause," including for "cumulative effects on the environment," OAC § 165:10-5-9(b), (c)(2). Those powers remain in the Commission's toolbox for use if escalated enforcement mechanisms ever became necessary. Defendants' so-called "voluntary and informal" compliance, however, affords the best of both worlds—quick compliance with the Commission's objectives in response to a complex, evolving situation without the need for the Commission to engage in time-consuming judicial or quasi-judicial enforcement actions. Those actions, however, remain available to the Commission if needed.

**III.   The Commission Has Ample Authority To Regulate Seismicity And Provide Appropriate Relief**

Finally, Plaintiff asks the Court not to abstain because the Commission supposedly "lacked authority to consider [seismic] impacts and to apply enforceable measures to prevent or reduce those impacts." (Plaintiff Br. 22.) But the Oklahoma legislature and

Governor Fallin just confirmed the OCC's authority on those points in April 2016 by enacting H.B. 3158.  That bill provides that "[f]or purposes of immediately responding to emergency situations having potentially critical environmental or public safety impact and resulting from activities within its jurisdiction, *the Corporation Commission may take whatever action is necessary . . . to promptly respond to the emergency*."  Enr. H.B. No. 3158, § 1 (to be codified at 17 Okla. Stat. § 52(D)) (emphasis added).

Plaintiff does not identify any gap in the Commission's authority to regulate seismicity associated with disposal wells after H.B. 3158.  Instead, Plaintiff merely demurs (Plaintiff Br. at 23) that the statute "has yet to be tested in court."  But Plaintiff offers no hint how or why a court might limit the Commission's statutory authority under H.B. 3158, and no reason is apparent.[1]

Plaintiff also defends its decision to pretermit the Commission's comprehensive regulatory scheme by asserting (Plaintiff Br. at 23) that the Commission "could not provide the relief Plaintiff seeks from this Court."  In particular, Plaintiff alleges that an immediate order "requiring Defendants to reinforce vulnerable structures" is necessary because "a reduction in disposal volumes would take substantial time" to reduce seismicity.  (Am. Compl. ¶ 8.)

But Plaintiff has made no attempt to seek that relief under the Commission's H.B. 3158 authority.  The Commission is empowered to "take *whatever action is necessary . . .*

---

[1] Plaintiff does not dispute that certain regulations that were recently adopted by the Commission and are awaiting Governor Fallin's signature further confirm the Commission's regulatory authority to address seismicity.  (*See* Devon Opening Br. 15 n. 7 & 8.)

to promptly respond to the emergency" (emphasis added).  Here, Plaintiff alleges that the reinforcement order is necessary to promptly respond to seismicity, and that seismicity presents an imminent and substantial endangerment for RCRA purposes.  (Am. Compl. ¶¶ 8, 59.)  Because Plaintiff offers no justification for refusing to seek that relief from the Commission under H.B. 3158, Plaintiff should not be excused from complying with Oklahoma's designated process for raising its concerns with the Commission.  *See* OAC § 165:10-5-7(f)(2) (any "affected person" can apply to the Commission for an order "determining whether or not the well should be used for further injection"); 165:10-5-9(b) ("any interested person" can file a complaint requesting an order that a well permit be "modified, vacated, amended, or terminated during its term for cause").

## CONCLUSION

Instead of accepting Plaintiff's request to become an ersatz seismicity czar that will inevitably get underfoot of the expert Commission, Devon respectfully requests that the Court dismiss the Amended Complaint under *Burford*.  Pursuant to Local Civ. R. 7.1(i), Devon also asks the Court to dismiss for the reasons stated in Devon's opening brief pursuant to the doctrine of primary jurisdiction (*see* Devon Opening Br. 21-28), Rule 19 (*id.* at 29-33), RCRA's imminent and substantial endangerment provision (*id.* at 33-38), and RCRA's anti-duplication provision (*id.* at 39-40).

Respectfully submitted,

/s/ Joy C. Fuhr
JOY C. FUHR
*Admitted via pro hac vice*
MCGUIREWOODS
800 Gateway Plaza
Richmond, VA 23219
(804)775-1100
jfuhr@mcguirewoods.com

JOHN J. GRIFFIN, JR., OBA #3613
L. MARK WALKER, OBA #10508
MARY ELLEN TERNES, OBA #19 9 9 5
CROWE & DUNLEVY
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7718
(405) 272-5225 (Facsimile)
john.griffin@crowedunlevy.com
mark.walker@ crowedunlevy.com
maryellen.ternes@ crowedunlevy.com

RONALD G. FRANKLIN
CHARLES B. HAMPTON
*Admitted via pro hac vice*
MCGUIREWOODS
500 Travis St., Suite 7500
Houston, TX 77002
(713) 571-9 19 1
rfranklin@mcguirewoods.com
champton@mcguirewoods.com


**ATTORNEYS FOR DEFENDANT DEVON ENERGY PRODUCTION COMPANY, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2016, I electronically transmitted and filed the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

William Federman
Carin Marcussen
Federman & Sherwood
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
*Attorneys for Plaintiff*

Kenneth Blakley
Matthew A. Paque
McAfee & Taft
Tenth Floor
Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
*Attorneys for Chesapeake Operating, LLC*

Karl Steven Bourdeau
Bina Redreddy Reddy
Beverage & Diamond, PC
1350 I Street, NW
Washington, DC 20005
*Attorneys for Chesapeake Operating, LLC*

Nate Steel
Jeremy Hutchison
Alex Gray
Steel, Wright & Collier
400 W. Capitol Avenue, Suite 3910
Little Rock, Arkansas 72201
*Attorneys for Plaintiff*

Richard Webster
Public Justice, P.C.
1825 K. Street, NW, Suite 200
Washington, D.C. 20006
*Attorneys for Plaintiff*

Robert Gumm
April Coffin
Gum, Pucket & Mackenzie - LLP
105 North Hudson
Suite 900
Oklahoma City, OK 73012
*Attorneys for New Dominion*

Scott Poynter
Poynter Law Group
400 W. Capitol Ave., Suite 2910
Little Rock, Arkansas 72201
*Attorney for Plaintiff*

Robin Greenwald
Curt D. Marshall
Weitz & Luxenberg, PC
700 Broadway
New York, NY 10003
*Attorneys for Plaintiff*

Kiran Phanswalker
Connor & Winters
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
*Attorney for SandRidge Exploration and Production LLC*

/s/ Joy C. Fuhr

9